UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE NICHOLS, et al.,

    Plaintiffs,                                                           Civil Action No. 21-CV-11803

vs.                                                                            HON. BERNARD A. FRIEDMAN

LIVONIA POLICE OFFICER JOHNSON, et al.,

    Defendants.
_____/

## OPINION AND ORDER GRANTING THE FEDERAL OFFICER DEFENDANTS' MOTION TO DISMISS AND GRANTING THE LIVONIA POLICE OFFICER DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

This matter is presently before the Court on defendants' motion to dismiss (ECF No. 9) and motion for judgment on the pleadings (ECF No. 11). The former motion was filed by Special Agent Adam Ayriss, Special Agent Eli Bowers, Special Agent Jonathan Brand, Special Agent Ryan Briggs, Task Force Officer James E. Brown, Task Force Officer Megan McAteer, Special Agent John McNulty, Special Agent Jeffrey O'Donnell, and Special Agent Christopher Tarrant (collectively, the "Federal Officer defendants"). (ECF No. 9, PageID.81). The latter motion was filed by Livonia Police Officer Johnson and Livonia Police Officer Holznagle (collectively, the "Livonia Police Officer defendants").[1] (ECF No. 11, PageID.150). Plaintiffs have not responded to either motion and the deadline for doing so has expired. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.

---

[1] In their motion, the Livonia Police Officer defendants note that the first amended complaint also names "Livonia Police Officer Liholznaglek," as a defendant in this case. (ECF No. 11, PageID.158). However, they contend, "[t]here is no one by that name who has ever worked at the Livonia Police Department." (*Id.*). Plaintiffs concede that they named defendant Liholznaglek in error and state that they "are bringing no action against him." (ECF No. 13, PageID.203).

I.      Background

Plaintiffs Wayne and Naomi Nichols and their then fourteen-year-old granddaughter, Jayla Coleman, filed this constitutional tort case against various law enforcement officers with the Detroit Police Department, Livonia Police Department, and Federal Bureau of Investigation ("FBI"). Plaintiffs state that in the early morning hours of August 6, 2018, their home in Detroit was the subject of a "coordinated and joint" raid pursuant to a search warrant that had been signed by a Wayne County Circuit Judge. (ECF No. 8, PageID.72-74, ¶¶ 11, 17, 23). Plaintiffs allege that the affidavit in support of the search warrant, which was submitted by certain unnamed Livonia Police Officers, mentioned plaintiffs only "in passing" and "contained false, incorrect and/or ambiguous statements that did not rise to the level of creating any type of probable cause to seize and search Plaintiffs or their property." (*Id.*, PageID.72-74, ¶¶ 9-10, 22).

Plaintiffs further allege that when Wayne Nichols answered the door on the morning of August 6, "he observed many of the FBI agent Defendants at the porch and surrounding area[], all with their guns pointed at him [and] he was told by the lead agent to 'open this door before I blow your fucking head off.'" (*Id.*, PageID.74, ¶ 23). Plaintiffs add that

> Defendants rushed through the door with great force and violence and the Plaintiffs (excluding Jayla Coleman) were immediately handcuffed . . . with guns pointed at them; . . . Wayne Nichols was then forced outside by the Defendant FBI agents to stand in front of his house in the nude in front of his neighbors for an extended period of time.

(*Id.*). Jayla Coleman was "eventually" allowed to "partially cover her grandfather . . . with a blanket." (*Id.*, PageID.74, ¶ 24).

Plaintiffs add that during the search Jayla Coleman "was detained by at least one of the FBI Defendants who interrogated her [while] . . . holding his holstered weapon in a

2

menacing manner." (*Id*., PageID.74, ¶ 25). Finally, plaintiffs state that Wayne Nichols was "arrested and taken to the Livonia Police station and held for over a day and while there he was transported to St. Mary's Hospital due to having an irregular heart beat brought on by the experience of the raid." (*Id*., PageID.73, ¶ 20). They assert that "no contraband was found at the property" as a result of the search. (*Id*., PageID.73, ¶ 18).

The first amended complaint contains four counts: (I) search and seizure in violation of 42 U.S.C. § 1983 against the Livonia Police Officer defendants, (II) false arrest and false imprisonment in violation of § 1983 against the Livonia Police Officer defendants, (III) illegal search and seizure ("*Bivens* claim") against the Federal Officer defendants, and (IV) failure to intervene in violation of § 1983 against Detroit Police Officer Bukowski. (*Id*., PageID.75-79).

In the instant motions the Federal Officer defendants and Livonia Police Officer defendants seek the dismissal of Counts I through III.

## II.     Legal Standard

Motions for judgment on the pleadings and motions to dismiss are subject to the same legal standard. *See Zeigler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). To survive such motions, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Two principles underlie this standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported

> by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

*Id.* at 678-79 (internal quotation marks and citations omitted).  For the following reasons, the Court concludes that the amended complaint fails to state plausible claims against the Federal Officer defendants or the Livonia Police Officer defendants.

### III. Federal Officer Defendants' Motion to Dismiss

In their motion to dismiss, the Federal Officer defendants state that the search warrant in this case was issued pursuant to "a joint investigation by Livonia police and the [FBI] into a drug distribution ring involving Rozelle Nichols and others." (ECF No. 9, PageID.91). Rozelle Nichols is Wayne Nichols' brother. (ECF No. 8, PageID.72, ¶ 13). The Federal Officers add that "[d]uring the investigation, Rozelle Nichols was seen frequenting [plaintiffs' home] multiple times," including a meeting with another suspect, Jammie Moultrie. (ECF No. 9, PageID.91). The investigating officers therefore believed that plaintiffs' house "was a stash house for dugs, currency or both." (*Id.*) (internal quotation marks omitted). They add that the search warrant "was supported by a 19-page affidavit authored by Livonia police officer Edward Johnson," which detailed the joint investigation.  (*Id.*; ECF No.9-3).

The Federal Officer defendants contend that the claims contained in plaintiffs' first amended complaint are not cognizable under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), "because they present a new context from previous *Bivens* cases and special factors counsel hesitation before expanding the *Bivens* remedy." (ECF

4

No. 9, PageID.90). Further, the Federal Officers argue that they are "entitled to qualified immunity because none of Plaintiffs' claims state a constitutional violation, nor do they allege with requisite factual specificity any claim against any specific individual." (*Id*.). For these reasons, they contend that the claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

In the recently issued opinion of *Egbert v. Boule*, 142 S. Ct. 1793 (2022), the Supreme Court clarified the purpose and scope of *Bivens* claims. The Court explained:

> In *Bivens*, the Court held that it had authority to create "a cause of action under the Fourth Amendment" against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations. 403 U.S. at 397, 91 S. Ct. 1999. Although "the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages," *id*., at 396, 91 S. Ct. 1999, the Court "held that it could authorize a remedy under general principles of federal jurisdiction," *Ziglar*, 582 U. S., at ——, 137 S. Ct., at 1854 (citing *Bivens*, 403 U.S. at 392, 91 S. Ct. 1999). Over the following decade, the Court twice again fashioned new causes of action under the Constitution—first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, *see Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L.Ed.2d 846 (1979); and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L.Ed.2d 15 (1980).
>
> Since these cases, the Court has not implied additional causes of action under the Constitution. Now long past "the heady days in which this Court assumed common-law powers to create causes of action," *Malesko*, 534 U.S. at 75, 122 S. Ct. 515 (Scalia, J., concurring), we have come "to appreciate more fully the tension between" judicially created causes of action and "the Constitution's separation of legislative and judicial power," *Hernández*, 589 U. S., at ——, 140 S. Ct., at 741. At bottom, creating a cause of action is a legislative endeavor. . . .
>
> Nonetheless, rather than dispense with *Bivens* altogether, we have emphasized that recognizing a cause of action under *Bivens* is "a disfavored judicial activity." *Ziglar*, 582 U. S., at

> ——, 137 S. Ct., at 1856-1857 (internal quotation marks omitted); *Hernández*, 589 U. S., at ——, 140 S. Ct., at 742–743 (internal quotation marks omitted). When asked to imply a *Bivens* action, "our watchword is caution." *Id.*, at ——, 140 S. Ct., at 742. "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[,] the courts must refrain from creating [it]." *Ziglar*, 582 U. S., at ——, 137 S. Ct. , at 1858. "[E]ven a single sound reason to defer to Congress" is enough to require a court to refrain from creating such a remedy. *Nestlé USA, Inc. v. Doe*, 593 U. S. ——, ——, 141 S. Ct. 1931, 1937, 210 L.Ed.2d 207 (2021) (plurality opinion).

*Egbert*, 142 S. Ct. at 1802-03.

The Sixth Circuit has further explained that a *Bivens* complaint must "allege that particular defendants performed the acts that resulted in a deprivation of [plaintiff's] constitutional rights." *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012). "[A] complaint containing only collective references to defendants does not adequately state a *Bivens* claim." *Id*. (collecting cases). Defendants must "be identified with particularity," as "each Government official . . . is only liable for his or her own misconduct." *Id*.

Plaintiffs have named nine federal officers as defendants in this case. However not one single officer is named in relation to particular acts or alleged misconduct. Rather, the first amended complaint makes only categorical and anonymous references to "FBI Defendants" or "Defendant FBI agents." (ECF No. 8, PageID. 74, ¶¶ 23, 25). Plaintiffs have failed to "allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Marcilis*, 693 F.3d at 596-97 (emphasis in original). In light of the general caution advised by the Supreme Court in the context of *Bivens* claims, and due to the lack of specific allegations as to any of the Federal Officer defendants, the Court concludes that plaintiffs have failed to raise a plausible *Bivens* claim in this case.

Further, defendants are entitled to qualified immunity. The Supreme Court has

"repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotation marks omitted). Courts "have discretion to choose which prong of the qualified immunity inquiry to consider first." *Ouza v. City of Dearborn Heights, Mich.*, 969 F.3d 265, 275 (6th Cir. 2020). The Sixth Circuit has explained:

> A right is clearly established for purposes of overcoming the qualified immunity defense only when existing precedent [has] placed the statutory or constitutional question beyond debate, although we do not require a case directly on point. Thus, an official cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.

*Id.* at 275-76 (internal quotation marks and citations omitted).

As relevant to the Federal Officer defendants, plaintiffs allege that (1) FBI agents pointed their guns at and threatened Wayne Nichols and forced him to stand outside handcuffed and unclothed "for an extended period of time"; (2) FBI agents handcuffed and pointed their guns at Naomi Nichols; and (3) an FBI agent (or agents) interrogated Jayla Coleman while "holding his holstered weapon in a menacing manner." (ECF No. 8, PageID.74, ¶¶ 23-25). None of these facts alleges a violation of a clearly established statutory or constitutional right.

The Sixth Circuit has stated:

> [O]fficers are entitled to rely on a judicially secured warrant for immunity . . . unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable. Moreover, [w]here the alleged Fourth Amendment

> violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in objective good faith.

*Marvaso v. Sanchez*, 971 F.3d 599, 610 (6th Cir. 2020) (internal quotation marks and citations omitted). Here, the Federal Officer defendants were acting pursuant to a facially valid search warrant issued by a neutral magistrate. Plaintiffs do not allege that the officers were aware of, or had reason to suspect, any defect with the warrant. Further, "officers executing a search warrant for contraband have the authority to detain the occupants of the premises while a proper search is conducted" to "prevent[] flight in the event that incriminating evidence is found; minimiz[e] the risk of harm to the officers; and facilitat[e] the orderly completion of the search." *Muehler v. Mena*, 544 U.S. 93, 98 (2005). Such "detention represents only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant." *Los Angeles Cnty., Cal. v. Rettele*, 550 U.S. 609, 613-14 (2007). Officers may also point their weapons at individuals when conducting a search, if they have reason to fear for their safety. *See Kelley v. McCafferty*, 283 F. App'x 359, 364 (6th Cir. 2008) (stating that is was reasonable for officers to point their weapons at plaintiff and her minor daughter when the officers "believed themselves to be entering an active drug house where weapons may be present, and with an unknown numbers of individuals inside"). Finally, neither holding a holstered weapon in a "menacing manner" nor the officers' alleged profanity-laden threat to Wayne Nichols rises to the level of a constitutional violation. *See Thacker v. City of Columbus*, 328 F.3d 244, 258 (6th Cir. 2003) ("[T]hreats alone cannot support a constitutional claim.").

As to Wayne Nichols' unclothed outdoor detention, the Court concludes that plaintiffs have failed to allege a violation of a clearly established statutory or constitutional right.

Courts have held that an individual may have a Fourth Amendment claim if, during the execution of a search or seizure, officers require the individual to remain unclothed for a prolonged period. In *Hall v. Shipley*, 932 F.2d 1147, 1153-54 (6th Cir. 1991), the Sixth Circuit concluded that "a reasonable officer . . . would have known that requiring an individual to sit naked [for approximately twenty or thirty minutes] while exposed to the cold January air would violate such individual's 'clearly established' rights." However in *Rettele*, 550 U.S. at 615, the Supreme Court held that plaintiffs' Fourth Amendment rights were not violated when officers required them to remain unclothed for a brief period – just over two minutes – during the execution of a search. The Court stated that "[d]eputies were not required to turn their backs to allow [plaintiffs] to retrieve clothing or to cover themselves with . . . sheets." *Id*. The Court also noted that "there [was] no allegation that the deputies prevented [plaintiffs] from dressing longer than necessary to protect their safety." *Id*. The Supreme Court further explained:

> The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty. Valid warrants will issue to search the innocent, and people like [plaintiffs] unfortunately bear the cost. Officers executing search warrants on occasion enter a house when residents are [unclothed]; and the resulting frustration, embarrassment, and humiliation may be real, as was true here. When officers execute a valid warrant and act in a reasonable manner to protect themselves from harm, however, the Fourth Amendment is not violated.

*Id*. at 615-16. The same analysis applies in the present case. The amended complaint fails to detail how long Wayne Nichols was forced to wait outside unclothed before his granddaughter covered him with a blanket. The complaint also fails to provide the Court with any information as to whether this period of nudity was longer than necessary to protect the safety of the investigating officers. Although Wayne Nichols was understandably frustrated, embarrassed, and humiliated by this encounter, the complaint fails to plausibly allege a clearly established

constitutional right that was violated by the Federal Officer defendants. For these reasons, the Court shall dismiss Count III of the first amended complaint.

### IV. Livonia Police Officer Defendants' Motion for Judgment on the Pleadings

In their motion for judgment on the pleadings, the Livonia Police Officer defendants raise three arguments. First, they contend that the first amended complaint advances only "conclusory allegations," which are insufficient to state a claim. (ECF No. 11, PageID.160). Second, they argue that, even if factually true, the allegations do not rise to the level of a constitutional violation. (*Id.*, PageID.160-61). Third, they assert that they are protected by qualified immunity, as the complaint fails to allege that "either Livonia Defendant was plainly incompetent or knowingly violated the law." (*Id.*, PageID.168) (internal quotation marks omitted).

Counts I and II of the first amended complaint assert Fourth Amendment claims for (1) "illegal and wrongful search and seizure" and (2) "false arrest and imprisonment," respectively. Both claims are based on the Livonia Police Officer defendants' authorship and presentation of an affidavit that allegedly contained "false, ambiguous, and/or incorrect information." (ECF No. 8, PageID.75-76, ¶¶ 29, 32). However, plaintiffs have failed to provide any factual allegations regarding what information in the affidavit, if any, was false, ambiguous, or incorrect. "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true . . . . But [courts] need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581-82 (6th Cir. 2007) (internal quotation marks and citations omitted).

Further, the Supreme Court has long held that "[t]here is . . . a presumption of

validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). An individual challenging the veracity of such an affidavit must therefore "point out specifically the portion of the warrant affidavit that is claimed to be false." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). Plaintiffs have failed to do so here.

Moreover, as with the Federal Officer defendants, the Livonia Police Officer defendants are protected by qualified immunity. The Sixth Circuit has explained:

> In the context of a Fourth Amendment claim that a police officer lied in a search warrant, we have distilled a specific inquiry. "To overcome an officer's entitlement to qualified immunity," a § 1983 plaintiff must make "a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). In addition, the plaintiff must then show "that the allegedly false or omitted information was material to the finding of probable cause." *Id*.

*Butler v. City of Detroit, Mich.*, 936 F.3d 410, 418 (6th Cir. 2019) (stating that the Sixth Circuit "derived the *Vakilian* standard from the Supreme Court's decision in *Franks*"). The Sixth Circuit has further noted that "[i]mplicit in *Vakilian*'s demanding standard is the recognition that a police officer swearing out an affidavit can make mistakes and yet remain protected by qualified immunity. To overcome this immunity, a plaintiff must present substantial evidence to show a more culpable mental state." *Id*. (internal quotation marks and citation omitted).

Plaintiffs in the present case have "not met this exacting standard. And even were [the Court] to indulge the assumption that [they] had, [they have] not shown that the warrant, when stripped of the false claims, would fail to establish probable cause. [They have] thus failed to meet either *Vakilian* prong." *Id*. at 419. The first amended complaint includes no allegations regarding the nature of the alleged falsehoods, the mental state of the Livonia Police Officer defendants, or the materiality of the challenged information. The Court therefore concludes that

the alleged false, ambiguous, or incorrect information contained in the warrant affidavit does not establish a plausible § 1983 claim against the Livonia Police Officer defendants. For these reasons, the Court shall dismiss Counts I and II of the first amended complaint.

**V.     Conclusion**

Accordingly,

IT IS ORDERED that the Federal Officer defendants' motion to dismiss (ECF No. 9) is granted.[2]

IT IS FURTHER ORDERED that the Livonia Police Officer defendants' motion for judgment on the pleadings (ECF No. 11) is granted.

Dated: July 18, 2022
Detroit, Michigan

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] The Court also notes the parties' stipulated order of dismissal as to plaintiffs' *Bivens* claim against the Federal Officer defendants, entered concurrently with the present opinion and order. (ECF No. 15).